266 F.3d 1083 (9th Cir. 2001)
 TAMMY NICHOLAS; SHERYL ALLBERT; JONATHAN T. DUTCZAK; DAVID L. HARDING; ABRAHAM HINSON; VINCENT HUGER; JOAN L. ILES; MICHAEL G. LEFRANCIS; ALLISON M. DETEMPLE-MASS; FRED R. MCKINNEY; KENNETH E. MORANO; DAVID H. RICHARDSON, JR.; WENDY RUTH WARREN, PLAINTIFFS-APPELLANTS,
v.
ARTHUR WALLENSTEIN, DIRECTOR, KING COUNTY DEPT. OF ADULT DETENTION; ARTHUR AND JANE DOE WALLENSTEIN, A MARITAL COMMUNITY; MICHAEL GRABER AND JANE DOE GRABER, A MARITAL COMMUNITY, DEFENDANTS,
CITY OF SEATTLE, A MUNICIPALITY, DEFENDANT-APPELLEE,
KING COUNTY, A LEGAL SUBDIVISION OF THE STATE OF WASHINGTON, DEFENDANT-APPELLEE.
 No. 99-36205
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted August 8, 2001
Filed September 11, 2001
 
 Sidney J. Strong, Kimberly A. Konat, Strong & Konat, P.S., Seattle, Washington, for the plaintiffs-appellants.
 Sandra K. Pailca, Regina S. Cahan, King County Prosecuting Attorney's Office, Seattle, Washington, for the defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington Barbara J. Rothstein, District Judge, Presiding. D.C. No. CV-99-00947-BJR
 Before: John T. Noonan, A. Wallace Tashima, and Richard C. Tallman, Circuit Judges.
 
 
 1
 Opinion by Judge Noonan; Concurrence by Judge Tashima
 
 Noonan, Circuit Judge
 
 2
 Tammy Nicholas and the other named plaintiffs (collectively the plaintiffs) appeal the judgment of the district court for the Western District of Washington granting summary judgment to King County and the other named defendants (collectively the defendants). The plaintiffs alleged violation by the defendants of 42 U.S.C. §§§§ 1983 and 1988 and specifically of their right to privacy under the due process clause of the fourteenth amendment, as well as a variety of torts under Washington law. The wrongs alleged arose from a prison officer, Michael Graber, one of the defendants, releasing the names of the plaintiffs, personnel who had been involved in restraining Robert Guy, a prisoner suffering from an overdose of cocaine. Graber had given this information to an angry group of Guy's family and friends at a time they knew that Guy was near death. The plaintiffs' contention is that the release of the information was done with deliberate indifference to the danger to them and that this indifference continued in the refusal of the defendants to afford them protection from the danger. Holding that the plaintiffs failed to produce evidence that would create a triable issue of material fact showing that the danger was known or obvious to the defendants, we affirm the judgment of the district court.
 
 FACTS
 
 3
 Reviewing the evidence in the light most favorable to the non-moving party, the following was established: On December 29, 1997, Robert Guy, an inmate of the King County Jail, was engaged in bizarre behavior, throwing himself into the walls, diving off his bunk, and smashing his head. The plaintiffs, corrections officers and health department nurses, responded to an emergency call for help. Several officers struggled with Guy and handcuffed him. They began to move him to the psychiatric area on the seventh floor for observation. He was still yelling and struggling. They used pepper stray to control him. Then they put him on a restraint board. At this point Guy stopped breathing and had no pulse. A nurse performed CPR, the paramedics were called, Guy was revived and transferred to Harborview Medical Center. Guy's family was notified and came to the hospital the next morning. Guy was comatose and later died.
 
 
 4
 On December 31, 1997, Guy's mother asked to see the incident reports. Michael Graber, jail Facility Commander and an employee of the King County Department of Adult Detention, consulted Jill Hendrix, Senior Deputy Prosecutor. Hendrix advised him that the reports should be disclosed pursuant to Washington's Public Disclosure Act (the PDA). Wash. Rev. Code §§ 42.17. On the same day as Guy's mother's request, Graber went to the hospital to deliver copies of the reports. He did not redact them to eliminate the names of personnel who had participated in Guy's restraint and removal.
 
 
 5
 Graber entered the conference room where 15 to 20 family members and friends of Guy were assembled. As soon as he introduced himself, Guy's father yelled, "You killed my boy." Another voice shouted, "You killed my cousin. " Another called, "You killed Robert Guy. You're not going to forget this." Graber then gave Guy's father the reports. The crowd tried to calculate the number of persons mentioned in them. Someone called out, "Nineteen officers killed Robert Guy." The crowd became more agitated, shouting, "You're going to pay." Guy's father's companion read the supervisor's summary report aloud. When she reached the part telling of the use of pepper spray, a big man got up, began yelling, pointed his finger at Graber, and moved towards him. Graber and Peter Boehme, the jail sergeant accompanying Graber, quickly left the room.
 
 
 6
 Upon return to the jail, Graber posted extra guards in front of the jail for the next two shifts. Boehme told several of the plaintiffs that the incident reports had been released so their names were known. Boehme also told them that some of Guy's family and friends were gang members. One jail administrator then denied that the reports had been handed out. A few days later Graber at roll call said he had given the reports only to Guy's mother. Graber did not mention the threats made at the meeting.
 
 
 7
 Graber did not answer telephone calls from one of the nurse plaintiffs, Tammy Nicholas, who wanted to know more about the release. Nicholas contacted her boss, Barbara Hadley, Administrator for Jail Health Services. Two weeks after the release, Hadley confirmed to Nicholas that Graber had released reports that "may have" included the names of the nurses. Hadley also told Nicholas of the "adversarial reaction by a large group of family and friends," but opined that none of the reaction was focused on the nurses. Hadley took no action to protect the nurses.
 
 
 8
 The plaintiffs were frightened by the knowledge that their names had been released to Guy's family and friends. A nurse, Allison DeTemple-Maas, declares that she has suffered "terrible anxiety and fear," particularly as her car was broken into and the parking lot she was assigned could be observed by inmates of the jail. Several officers and nurses received hang-up calls at home. One officer found on his doorstep a newspaper clipping about Guy's death, accompanied by old insurance cards for the officer's children, which the officer had put in the trash and an unseen visitor had retrieved. Shortly after the release, Office Pott was outside the jail when a car drove up and a passenger pointed a gun at him. Tires on several of the plaintiffs' cars were slashed. Guy's family and friends staged several rallies outside the jail that the plaintiffs interpreted as directed against them. Posters carried by the demonstrators said, "Robert Wayne Guy, Jr. Dead At 20, Murdered While In Custody At King County Jail. Make them accountable."
 
 
 9
 None of the plaintiffs have suffered physical injury. They have suffered emotional injury.
 
 PROCEEDINGS
 
 10
 On April 28, 1999, the plaintiffs began this action in King County Superior Count. They alleged violation of their common law and Washington State Constitution right to privacy; negligence; infliction of emotional distress; negligent training and supervision of Graber; violation of Wash. Rev. Code §§ 70.48.800 and Wash. Rev. Code §§ 42.17; and violation of 42 U.S.C. §§§§ 1983 and 1988, "specifically the Plaintiffs' rights to privacy as guaranteed by the Due Process clause of [the] Fourteenth Amendment."
 
 
 11
 On June 11, 1999, the defendants removed the case to the federal district court. In the following two months, the plaintiffs took one deposition, the defendants none. On August 26, 1999, the defendants moved for summary judgment, attaching three declarations to their motion. On September 8, 1999, the plaintiffs asked for a continuance to permit them to depose the two declarants "or any others." On September 10, 1999, the plaintiffs' request was denied. The plaintiffs then filed a response to the summary judgment motion.
 
 
 12
 On November 5, 1999, the district court granted summary judgment. The court noted that under the PDA the incident reports, once requested would have been eventually disclosed as public records, unless something in Wash. Rev. Code §§ 42.17 prevented the disclosure. Wash. Rev. Code §§ 42.17.260(1) did instruct that "identifying details" should be deleted if disclosure would involve an invasion of personal privacy. Hearst Corp. v. Hoppe, 580 P.2d 246, 253 (Wash. 1978), held that this exemption was meant to apply to the most intimate details of personal life, including sexual relations, illnesses, and family quarrels. Cowles Publ'g Co. v. State Patrol, 748 P.2d 597, 605 (Wash. 1988) (en banc) held that names in police internal investigation reports were not protected by the exemption. Matters of suspected misconduct by the police were of legitimate concern to the public. Relying on Hearst and Cowles, the court found the personal privacy exemption inapplicable.
 
 
 13
 Three other exemptions were also found not to apply: Wash. Rev. Code §§ 42.17.310(1)(d) providing for nondisclosure "essential to effective law enforcement or for the protection of any person's right to privacy;" Wash. Rev. Code §§ 42.17.310(e), protecting disclosure of the names of witnesses to a crime; and Wash. Rev. Code §§ 70.48.100(2), pertaining to the records of "a person confined in jail." Disclosure of the reports, the court held, did not disrupt law enforcement, they did not contain the names of witnesses to a crime, and the jail records exemption protected a prisoner, not prison employees. The PDA did provide for a five-day response time, but the time was given the county to determine if it would and could disclose records, it was not for the benefit of the employees. Under the PDA, good faith was a complete defense. Wash. Rev. Code §§ 42.17.258. As Graber had consulted county counsel, there was no doubt that he had acted in good faith. None of the plaintiffs' state law claims survived this conclusion.
 
 
 14
 The district court disposed of the plaintiffs' constitutional claim of privacy by holding that there had been no invasion of privacy. The court, however, treated the case as if the plaintiffs had amended their complaint to make clear that they were also alleging a violation of their liberty by a state-created danger. The court held that this approach failed because danger to them was not known or obvious to the defendants.
 
 
 15
 The plaintiffs' motion for reconsideration was denied. They appealed to this court.
 
 ANALYSIS
 
 16
 The plaintiffs' briefs on appeal do not refer to the issues of state law, but only to the fourteenth amendment and§§ 1983, to the exclusion of certain evidence, and to the denial of a continuance to permit further discovery.
 
 
 17
 Section 1983. The plaintiffs rely on Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), holding that deliberate indifference by state actors to known or obvious dangers created by their conduct is actionable under §§ 1983. At the moment Graber released the incident reports he knew that the crowd to whom he was releasing them believed that personnel connected with the jail had killed Robert Guy. It may be inferred that he had read the reports, and it may be inferred that he was aware that the number of persons involved in restraining Guy would excite the crowd and that the reported use of pepper spray would inflame them. What he has not been shown to know is that there were gang members among them or that they would have the capacity and sustained desire to wreak vengeance on the officers and nurses involved. Knowing that the crowd was angry was not knowing that they would take criminal measures to make the jailors or their health helpers pay.
 
 
 18
 Addressing this issue and reaching this conclusion, we have proceeded as the district court did, as if the complaint had clearly alleged a deprivation of liberty by the release. In argument of this appeal, the plaintiffs have contended that the defendants demonstrated deliberate indifference to their liberty by not promptly notifying them of the release of the records and by not taking steps to protect them from dangers that ultimately became apparent. The plaintiffs press their claim by pointing to Graber adding to the force on duty at the front of the jail and the various incidents of harassment, including the assault by the gun-toting passenger in the passing automobile. They urge that the inference may be drawn in their favor that these ugly acts against them were carried out because Graber's release of the records had identified them.
 
 
 19
 The posting at the jail, however, was only for two shifts and reflects a concern for an attack on the jail itself, not a sense that the supporters of Guy would track down the personnel involved. The inference that persons outraged at Guy's death were harassing the named individuals is not proved but one that a reasonable jury could draw. What the plaintiffs did not show was that they reported all the harassments to King County or that they gave King County any evidence that the sporadic harassment would continue. One plaintiff does state that he was denied permission to park in a garage rather than in the insecure parking lot during a demonstration; but the jail authorities could have reasonably concluded that public demonstrators would be unlikely to engage in open violence. The most serious incident, assault with a gun, was the sort of opportunistic crime which could not have easily been anticipated nor easily guarded against. No deliberate indifference to known or obvious dangers after the report's release has been shown.
 
 
 20
 The complaint, as drafted, focused on an invasion of privacy. We agree with the district court that compliance with the PDA, with its strong preference for disclosure, was not a constitutional tort. True, if a constitutional right is denied, a state statute cannot excuse the denial. But the statute is of relevance in determining what privacy police or prison or other public personnel expected to have. Every public employee in the state of Washington was on notice that the public had a right to records which bore on suspected misconduct in the performance of public duties, and that the names of involved personnel were not exempt from disclosure.
 
 
 21
 The plaintiffs point to the disclosure policy of the county health department as showing a standard stricter than the PDA. The policy does state that the names of health providers will be blacked out when records are released. But this provision applies to records released to inmates after incarceration. The only class to which the health department categorically will not release records is composed of individuals known to the department to have serious mental health problems. There is nothing in the health department policy that would lead nurses to expect exemption from the PDA.
 
 
 22
 The Exclusion of Evidence. The district court excluded as hearsay the declarations of several plaintiffs that Boehme told them that members of the Guy party were members of a criminal gang. The plaintiffs say that such testimony was offered not for truth of the fact but as evidence of the defendants' state of mind. Boehme, however, is not a defendant. He had no control over the release. His state of mind is not relevant.
 
 
 23
 Denial of Continuance. The plaintiffs were not given much time for discovery before the defendants moved for summary judgment. But they did not tell the district court why they needed more time. They said they wanted to take the depositions of Graber and of Arthur Wallenstein, the jail director. On appeal, the plaintiffs say that they did not have the opportunity to depose Graber or Guy's mother or Hendrix. It is not evident that the mother or Hendrix would have added anything to their case. Graber was made available for deposition by the plaintiffs, but was not deposed because of their counsel's other commitments. The plaintiffs had already conducted a large amount of informal discovery. They had the burden of setting out "what further discovery would reveal that is `essential to justify [their] opposition.' " Program Eng'g, Inc. v. Triangle Publications, Inc., 634 F.2d 1188, 1194 (9th Cir. 1980) (quoting Fed. R. Civ. P. 56(f)). They did not make clear "what information is sought and how it would preclude summary judgment." Margolis v. Ryan , 140 F.3d 850, 853 (9th Cir. 1998) (internal citation omitted). The district court did not abuse its discretion in denying the continuance.
 
 
 24
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 TASHIMA, Circuit Judge, concurring:
 
 25
 I concur in all of Judge Noonan's opinion, including the result reached in the part discussing Denial of Continuance. Maj. op. at 12868-69. I write separately only to elaborate on why I reach that result.
 
 
 26
 At oral argument, appellants' counsel candidly indicated that, given the early stage of the litigation, his Rule 56(f) showing was not as complete as it could have been. In today's modern case management era and the complex rules that implement it, it is easy for counsel to be lulled into a false sense of security that, at least until the court sets a discovery cutoff date, by a Fed. R. Civ. P. 16(b) scheduling order or otherwise, plenty of time remains for discovery and pretrial motions. As this case shows, however, such case management and scheduling is within the control of the trial judge and will not be disturbed, absent an abuse of discretion.
 
 
 27
 Counsel might normally expect that Rule 56(f) requests would be liberally granted when made even before a discovery cutoff date has been established. At the end of the day, however, the exercise of the district court's discretion must be measured by whether any claimed error "affect[ed] the substantial rights of the parties." Fed. R. Civ. P. 61. As the majority opinion indicates, maj. op. at 12869, plaintiffs have not shown how they were prejudiced by the court's refusal to grant them a Rule 56(f) continuance. For these reasons, I join in the court's opinion.