**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DILLON L. BRACKEN,
*Plaintiff-Appellant*,

v.

AARON H. OKURA; KYO-YA HOTELS
AND RESORTS, L.P.,
*Defendants*,

and

KINCHUNG CHUNG,
*Defendant-Appellee.*

No. 14-16886

D.C. No.
1:11-cv-00784-
LEK-BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted June 15, 2017
Honolulu, Hawaii

Filed August 23, 2017

Before: Raymond C. Fisher, Richard A. Paez
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Fisher

# SUMMARY[*]

## Civil Rights

The panel vacated the district court's summary judgment granting qualified immunity to a Honolulu Police Department officer in an action brought under 42 U.S.C. § 1983 and state law by Dillon Bracken, who alleged that Officer Chung violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to intercede to stop an assault on him by hotel security guards.

Officer Chung had been hired by a hotel as a special duty officer to provide security for a private event. Although Chung wore his police uniform, and the Honolulu Police Department approved his employment at the hotel, the Department considered him off-duty while working there. Chung, wearing his police uniform, helped detain Bracken in order to issue an internal trespass warning and then failed to intercede when Bracken was assaulted by private security personnel.

The panel held, first, that Chung could not assert qualified immunity because he was not serving a public, governmental function while being paid by the hotel to provide private security. On the merits, the panel held there was a triable issue as to whether Chung violated Bracken's right to liberty by placing Bracken in danger and then failing to protect him from harm. The panel held that a reasonable jury could find Chung exposed Bracken to harm he would not otherwise have

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

faced, that this harm was foreseeable and that Chung acted with deliberate indifference in the presence of a known danger, created by his conduct. The panel remanded for further proceedings.

## COUNSEL

Charles S. Lotsof (argued), Honolulu, Hawaii, for Plaintiff-Appellant.

Sarah T. Casken (argued) and Curtis E. Sherwood, Deputies Corporation Counsel; Donna Y.L. Leong, Corporation Counsel; Department of the Corporation Counsel, Honolulu, Hawaii; for Defendant-Appellee.

## OPINION

FISHER, Circuit Judge:

Qualified immunity protects government officers in the performance of their public, governmental functions. It does so "not to benefit [the] agents" of government, but "to safeguard government" itself, "and thereby to protect the public at large." *Wyatt v. Cole*, 504 U.S. 158, 168 (1992). In this case, Honolulu Police Department (HPD) Officer Kinchung Chung seeks the protection of qualified immunity for actions he took, or failed to take, while hired and paid by a hotel to provide "special duty" security for a private event. Although the police department considered Chung off-duty, he wore his police uniform, and he used the badge of authority it conveyed to help detain a hotel patron, Dillon Bracken. Chung does not contend that Bracken had

committed a crime. Rather, hotel personnel had decided to issue Bracken an internal "trespass" warning for entering a New Year's Eve party without permission. After Chung helped detain him, hotel security guards allegedly assaulted Bracken. Bracken sued under 42 U.S.C. § 1983, alleging Chung violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to intercede and stop the assault. The district court granted Chung summary judgment based on qualified immunity and on the merits.

We hold, first, that Chung may not assert qualified immunity, because he was not serving a public, governmental function while being paid by the hotel to provide private security. We also hold, on the merits, that a reasonable jury could find Chung exposed Bracken to harm he would not otherwise have faced, that this harm was foreseeable and that Chung acted with "deliberate indifference . . . in the presence of [the] known danger, created by [his] conduct." *L.W. v. Grubbs*, 92 F.3d 894, 896 (9th Cir. 1996) (*L.W. II*). We therefore vacate and remand.

## I. Background

On New Year's Eve in 2009, Bracken attended a party at the Kyo-ya Hotel and Resort's Rumfire Restaurant. Aaron Okura, a security guard for Kyo-ya, saw Bracken step over a rope without a wristband indicating he was entitled to be there. Okura moved toward Bracken, while Bracken tried to walk further into the party.

Chung observed this interaction, approached and, together with Okura, stopped Bracken. Kyo-ya had hired Chung as a "special duty" officer to provide security for the event. Although Chung wore his police uniform, and HPD approved

his employment at Kyo-ya, the HPD website says "HPD officers hired for special duty assignments are off-duty." *See* Ask HPD: Hiring Special Duty Officers, www.honolulupd.org/news/index.php?page=main&story=1 610 (last visited Aug. 16, 2017).[1] Chung was paid directly by the hotel for his employment at Kyo-ya – not by HPD. Chung also acted at the hotel's direction in helping to stop Bracken, doing so because hotel personnel had decided to issue Bracken an internal "trespass" warning, pursuant to the hotel's internal policies.[2]

When Chung and Okura confronted Bracken, Bracken began recording video on his cell phone. The video shows Chung asking Bracken for his identification and telling him he was being "trespassed," while Bracken repeatedly asked whether he could leave. Shortly thereafter, other Kyo-ya security guards arrived. The security guards then tackled Bracken, allegedly assaulted him and took him to the hotel's security office. Except for the initial takedown, the video does not show the alleged assault, because Bracken's phone fell to the ground. The audio continues, however, and Bracken's voice can be heard screaming in pain, cursing and asking the guards to stop hurting him. Bracken allegedly lost consciousness at several points, suffered a vocal cord and larynx injury and incurred bruising on his wrists. Once the group reached the security office, Bracken provided his

---

[1] Chung does not contend he was on-duty while providing security for Kyo-ya.

[2] When the hotel decided it did not want a given person on its premises, it would "trespass" them – an in-house warning stating the person was not welcome at the hotel for a period of one year and that if the person returned, the hotel would "call the police" and pursue legal remedies.

identification. He was then issued the written trespass warning, examined by paramedics and allowed to leave. Although Bracken does not argue that Chung was involved physically in the alleged assault, the phone audio and video show he was present the entire time.

Bracken filed suit against the hotel, the hotel security guards and Chung. He brought claims under state law, along with § 1983 claims under the Fourth and Fourteenth Amendments for unlawful seizure, excessive force and failure to intercede. The district court granted Chung summary judgment on all claims, both on the merits and based on qualified immunity. Bracken appeals only the § 1983 failure to intercede claim. We review de novo a district court's grant of summary judgment, *see Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007), and we vacate and remand.

## II. Discussion

## A. Qualified Immunity

We first address whether Chung may invoke the doctrine of qualified immunity. "There are two questions that must be answered" when an officer seeks qualified immunity. *Jensen v. Lane Cty.*, 222 F.3d 570, 576 (9th Cir. 2000). The first is "whether qualified immunity is categorically available" to the type of officer at issue. *Id.*[3] "Second, if qualified immunity

---

[3] Chung contends Bracken waived this argument by not raising it below. We disagree. "To have been properly raised below, 'the argument must be raised sufficiently for the trial court to rule on it.'" *Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996) (quoting *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989)). Bracken raised this argument both in opposition to the motion to dismiss and in his motion for reconsideration after summary judgment.

is available generally, we must determine whether [the officer] is entitled to it in this case," i.e., whether the officer "violated a clearly established constitutional . . . right." *Id.*

### 1. State action for purposes of § 1983 is not co-extensive with state action for which immunity is available.

Chung conceded at oral argument that he "absolutely" acted under color of state law in helping detain Bracken, and he argues that, because of this, qualified immunity is necessarily available to him. We agree that Chung acted under color of state law for § 1983 purposes: In preventing Bracken from leaving the party, Chung invoked the authority conveyed by his police uniform and badge. *See Wyatt*, 504 U.S. at 161. We disagree, however, that this automatically entitles him to invoke qualified immunity.

State action for § 1983 purposes is not necessarily co-extensive with state action for which qualified immunity is available. *See Jensen*, 222 F.3d at 576 ("[A] finding of 'state action' on the part of Dr. Robbins does not require this court to find that he is entitled to qualified immunity." (citing *Richardson v. McKnight*, 521 U.S. 399 (1997)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161. Qualified immunity, on the other hand, "protect[s] *government's* ability to perform its traditional functions." *Id.* at 167 (emphasis added). Courts, therefore,

> have recognized qualified immunity for government officials where it was necessary to preserve their ability to serve the public

good or to ensure that talented candidates
were not deterred by the threat of damages
suits from entering public service. In short,
. . . qualified immunity . . . *acts to safeguard
government, and thereby to protect the public
at large, not to benefit its agents.*

*Id.* at 167–68 (emphasis added) (citations omitted). Thus, the
availability of immunity does not necessarily overlap with
state action under § 1983 when a government officer uses the
"badge of their authority," *id.* at 161, in service of a private,
non-governmental goal. *See generally Richardson*, 521 U.S.
at 404–12.

### 2. *Neither a firmly rooted tradition of immunity nor the purposes underlying the doctrine justifies qualified immunity for Chung.*

Neither this court nor the Supreme Court has addressed
the general availability of qualified immunity to off-duty
police officers acting as private security guards.[4]  In other
contexts, however, we have followed the Supreme Court's
instruction to "look both to history and to the purposes that
underlie government employee immunity in order to find the
answer." *Richardson*, 521 U.S. at 404; *see Jensen*, 222 F.3d
at 576. The first inquiry is whether "[h]istory . . . reveal[s] a

---

[4] We are also not aware of any case from other circuits squarely
addressing the issue. *See Saenz v. G4S Secure Sols. (USA), Inc.*, 224 F.
Supp. 3d 477, 481–82 (W.D. Tex. 2016) (noting "nation[-wide]
uncertainty regarding this issue"); *see also Morris v. Dillard Dep't Stores,
Inc.*, 277 F.3d 743, 753 (5th Cir. 2001) (assuming without analysis that
immunity was available to an off-duty officer acting as a security guard);
*Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 763 & n.5 (7th Cir. 2006)
(taking a similar approach).

'firmly rooted' tradition of immunity." *Richardson*, 521 U.S. at 404. We look principally to "the common law as it existed when Congress passed § 1983 in 1871." *Filarsky v. Delia*, 566 U.S. 377, 384 (2012). The next question is whether granting immunity would serve the purposes underlying the immunity doctrine – such as "protecting government's ability to perform its traditional functions," "preserv[ing] the ability of government officials to serve the public good," "ensur[ing] that talented candidates [are] not deterred by the threat of damages suits from entering public service," and "protecting the public from unwarranted timidity on the part of public officials." *Richardson*, 521 U.S. at 407–08 (citations and internal quotation marks omitted).

Applying that framework, we conclude qualified immunity is unavailable to Chung. First, he has shown no "firmly rooted" tradition of immunity for off-duty or special duty officers acting as private security guards. Indeed, Chung has not cited any supporting historical authority. Nor has our own review revealed a "firmly rooted" tradition of immunity. *Cf. Filarsky*, 566 U.S. at 387–89 (explaining that immunity was historically available to "public servants and private individuals engaged in *public* service" when they were "carrying out *government* responsibilities" (emphasis added)); *Richardson*, 521 U.S. at 404 ("History does *not* reveal a 'firmly rooted' tradition of immunity applicable to privately employed prison guards."). We are not aware of any state that offers immunity where an officer serving as a private security guard did not act in service of a public duty, and some states have held immunity is simply unavailable in

this context.**[5]**  Thus, the historical inquiry does not support immunity for Chung here.

Second, Chung has not shown that the policies underpinning qualified immunity warrant invoking the doctrine here.  In detaining Bracken, Chung did not act "in performance of *public* duties" or to "carry[] out *the work of government*." *Filarsky*, 566 U.S. at 389–90 (emphasis added) (citing *Richardson*, 521 U.S. at 409–11).  He does not contend, for example, that he was preventing Bracken from committing a crime.  Instead, Chung – acting on behalf of the hotel, at the hotel's direction and while being paid by the

---

**[5]** *See, e.g.*, *Traver v. Meshriy*, 627 F.2d 934, 940 (9th Cir. 1980) ("Under California law, . . . [immunity] is not available to an off-duty police officer . . . who was acting in the scope of his employment as a private security guard." (citing *Cervantez v. J.C. Penney Co.*, 595 P.2d 975 (Cal. 1979), *abrogated in part by statute as explained in Melendez v. City of Los Angeles*, 73 Cal. Rptr. 2d 469, 473–77 (Ct. App. 1998))); *Lovelace v. Anderson*, 785 A.2d 726, 739–40 (Md. 2001) ("[W]hile acting as a private security guard for the hotel, [off-duty officer] Anderson was clearly not entitled to public official immunity."); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 793–94 & n.6 (Tex. Ct. App. 1996) (denying summary judgment on qualified immunity where the off-duty officer moonlighting as a security guard did not establish "that he was acting within the scope of his authority as a police officer during the incident"); *cf. Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 28–30 (Ky. Ct. App. 2016) (granting immunity to an off-duty "peace officer" serving as a security guard because the officer's conduct fell within the statutorily defined authority of an off-duty officer; construing broadly the circumstances where immunity would be available); *cf. also Dickson v. Waldron*, 34 N.E. 506, 509–10 (Ind. 1893) (explaining in the context of respondeat superior liability, where a "special policeman" served as a theater's "doorkeeper," that "[b]ecause he was a police officer, it does not follow that all his acts were those of a policeman . . . . [and] [e]ven if he were a regular patrolman, called in off the street by [the theater] or [its] agents to aid in enforcing the regulations of the theater, he would, for such purpose, be only an agent of [the theater].").

hotel – aided the hotel in realizing *its* goal of issuing Bracken a warning.  Thus, shielding Chung from suit would not advance the policies underlying qualified immunity.  *See id.* at 389–91.  We hold that qualified immunity is not available to Chung.  The district court erred in concluding otherwise.**[6]**

## B.  Failure to Intercede

We turn next to the merits of Bracken's failure to intercede claim.  On summary judgment, we view the evidence in the light most favorable to the non-moving party (here, Bracken).  *See Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017).  Summary judgment is inappropriate if "a reasonable juror drawing all inferences in favor of [Bracken] could return a verdict in [Bracken's] favor."  *Id.* at 441 (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

Bracken contends that because Chung helped detain him and prevented him from leaving the party, Chung had a duty to intervene once the security guards began assaulting him.  "Although the general rule is that the state is not liable for its" failure to protect an individual from harm, "there are several exceptions to this rule."  *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000).  One of these "is the 'danger creation' exception," which imposes a duty to intercede on an officer "where there is 'affirmative conduct on the part of the [officer] in placing the plaintiff in danger.'"  *Id.* (quoting *L.W. v. Grubbs*, 974 F.2d 119, 121

---

**[6]** We do not decide whether qualified immunity might be available to an off-duty officer who steps back into a police officer role, for example, to prevent a crime from occurring.  That is a different case for a different time.

(9th Cir. 1992) (*L.W. I*)); *see, e.g.*, *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (holding an officer's affirmative conduct that placed a woman in danger "trigger[ed] a duty of the police to afford her some measure of peace and safety"). For this duty to be triggered, the harm the plaintiff suffers as a result of the officer's affirmative conduct must have been foreseeable at the time of the officer's conduct placing the plaintiff in danger. *See Lawrence v. United States*, 340 F.3d 952, 957 (9th Cir. 2003) ("[I]n each of the cases in which we have applied the danger-creation exception, ultimate injury to the plaintiff was foreseeable."). When an officer's affirmative conduct creates a foreseeable risk of harm to the plaintiff, the officer will be liable for failing to intercede if the officer demonstrates "deliberate indifference" to the plaintiff's plight. *See L.W. II*, 92 F.3d at 896 ("We have not deviated from the principle that deliberate indifference on the part of the responsible official, to the safety of [others,] in the presence of known danger, created by official conduct, is sufficient to establish a due process violation under Section 1983."); *see also Nicholas v. Wallenstein*, 266 F.3d 1083, 1088 (9th Cir. 2001) (declining to impose liability where the plaintiffs did not show officials' "deliberate indifference to known or obvious dangers" that arose after the allegedly danger-creating conduct occurred).[7]

---

[7] Our cases also permit liability for officers who demonstrate deliberate indifference in *creating* a danger, as distinguished from *responding* to the foreseeable danger they created. *See, e.g.*, *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006) (holding the evidence "establish[ed] that [the defendant] acted deliberately and indifferently *to the danger he was creating*" (emphasis added)). Chung does not argue these cases preclude liability for an officer's deliberately indifferent response to foreseeable danger the officer creates, *see*

Here, a reasonable jury could find that Chung engaged in affirmative conduct that exposed Bracken to foreseeable harm. Even as the situation escalated, the alleged assault began and it became foreseeable that Bracken would suffer harm, Chung affirmatively prevented Bracken from leaving the party and ensured that Bracken remained under the control of the hotel's security guards. The cell phone video shows that while the other security guards surrounded Bracken and physically grabbed his arm and shoulder, Chung stood directly in front of Bracken asking him for identification and telling him he was being trespassed. As the jostling and yelling became more intense, Bracken looked at the group of people detaining him and said, "Do not do this." Chung did not step away or intimate that the situation was now under the security guards' control. Instead, he again asserted his authority over Bracken, again telling Bracken he was being trespassed and needed to show identification. Seconds later, as Chung asked for Bracken's identification yet again, the takedown occurred. At this point – while Chung was still an active participant in the incident – Chung could foresee that his conduct "expose[d] [Bracken] to a danger" he "would not have . . . faced" had Chung let him leave, triggering a duty to intercede. *Kennedy*, 439 F.3d at 1061; *see Wood*, 879 F.2d at 588, 590 (officers exposed a woman to foreseeable danger by leaving her on the side of a road in a high-crime area, where the officer knew or should have known of crime reports and "common sense" suggested the woman might suffer harm); *see also* Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *Dobbs' Law of Torts* § 159 (2d ed. 2017) (describing foreseeability as whether "a

---

Answering Br. at 19 (accepting the theory that an officer can be liable for "affirmatively act[ing] to create a danger and then show[ing] deliberat[e] indifference to the danger created"), and we do not read them as doing so.

reasonable person would recognize a risk of harm"). As a trained police officer, Chung should have known the guards were overreacting and exposing Bracken to injury.

A jury could also find that Chung showed "deliberate indifference . . . in the presence of [the] known danger, created by [his] conduct." *L.W. II*, 92 F.3d at 896. After the takedown, the alleged assault continued for more than ten minutes. During this time – although only audio is discernable on the recording – a voice that reasonably could belong to Chung can be heard along with Bracken's screams and requests for the security guards to stop hurting him. At no point, however, did Chung take any action to stop the assault. Thus, a jury could find that Chung knew the security guards were hurting Bracken and deliberately chose to do nothing about it. *See id.* at 900 ("The deliberate indifference standard . . . requires that the defendant have actual knowledge of, or willfully ignore, impending harm."). In short, a reasonable jury could find Chung liable on a failure to intercede theory. The district court therefore erred by granting summary judgment to Chung on Bracken's due process claim.**[8]**

---

**[8]** The district court did not address the danger-creation exception. It granted summary judgment on the failure to intercede claim addressing only a different "route to police officer liability" for failure to intercede: "police officers['] . . . duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd in part on other grounds by Koon v. United States*, 518 U.S. 81 (1996). Bracken does not appear to contest the district court's conclusion regarding the "fellow-officer" exception, relying instead on the danger-creation exception. *See, e.g.*, Opening Br. at 16 ("The essence of a failure to intercede cause of action is the off[i]cer's deliberate indifference to the victim's exposure to a known risk that was increased by the officer's action."). Thus, we do not address whether the fellow-officer exception applies here.

### III. Conclusion

We hold that qualified immunity is unavailable to Chung, and that a reasonable jury could find Chung liable for failing to intercede against the harm to which he exposed Bracken.

**VACATED AND REMANDED.**

Costs on appeal are awarded to Appellant Bracken.