NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 2 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BEN PORTER, Successor-in-Interest to Decedent HANEEFAH NURIDDIN, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; JAMES KAY TERRY, in his individual and official capacity as an employee of the CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendants-Appellees. | No.   19-16343 <br><br> D.C. No. 4:16-cv-03771-CW <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted August 12, 2020
San Francisco, California

Before:  GRABER and BRESS, Circuit Judges, and DAWSON,** District Judge.
Partial Concurrence and Partial Dissent by Judge DAWSON

Ben Porter, individually and as successor-in-interest to his daughter, decedent

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, sitting by designation.

Haneefah Nuriddin, brought several claims under 42 U.S.C. § 1983 against defendants City and County of San Francisco and James Terry, a city-employed mental health specialist. Nuriddin was involuntarily committed at a city-run mental health rehabilitation center. Porter's claims relate to Nuriddin's tragic death after she fled from Terry during a medical appointment to which Terry had accompanied her. The district court entered summary judgment for defendants, and Porter now appeals. We have jurisdiction under 28 U.S.C. § 1291. Reviewing the grant of summary judgment de novo, *see Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019), *cert. denied*, No. 19-1021, 2020 WL 2515813 (U.S. May 18, 2020), *reh'g denied*, No. 19-1021, 2020 WL 4429721 (U.S. Aug. 3, 2020), we affirm.

1.    Porter first argues that Terry violated Nuriddin's Fourteenth Amendment rights by failing to exercise proper supervision over her, which Porter claims led to Nuriddin's elopement and death. In determining whether a government official is liable under § 1983 or entitled to qualified immunity, we ask (1) whether he violated another's constitutional rights and, if so, (2) whether the constitutional right was "clearly established" at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Construing the facts in the light most favorable to Porter, Porter fails to show that either prong of this test is met.

a.    To show a constitutional violation under these circumstances, Porter must demonstrate that Terry acted with "objective deliberate indifference." *Gordon*

*v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Under this standard, among the elements that Porter must show are that Terry put Nuriddin "at substantial risk of suffering serious harm" and "did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." *Id.*

Porter argues that the deliberate indifference standard is met because Terry failed to appreciate that Nuriddin was a flight risk and left her unsupervised while he made a phone call; followed after her once she disappeared rather than immediately reporting her missing; and failed to carry a cell phone when taking Nuriddin to the appointment. While some of Terry's actions were perhaps negligent, his actions did not amount to deliberate indifference, or gross negligence. The undisputed facts show that Nuriddin was improving in her treatment, about to be released, and was not a known flight risk. Terry also pursued Nuriddin and then reported her missing. Under these circumstances, Terry was not deliberately indifferent. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (explaining that deliberate indifference requires "more than negligence").

We therefore respectfully disagree with our fine dissenting colleague on this point. The dissent does not identify any dispute of fact that is material on the

3

question of deliberate indifference. Fed. R. Civ. P. 56(a). In addition, the relevant undisputed facts are drawn not solely from Terry's testimony, but from other record evidence indicating that Nuriddin was not an identified flight risk and that AWOL procedures were initiated shortly after 2:00pm that day.

b. Even if Terry had violated Nuriddin's constitutional rights, he would be entitled to qualified immunity because his actions did not violate clearly established law. The primary case that Porter cites is our en banc decision in *Castro*. 833 F.3d at 1060. That case, however, presented much different circumstances involving a due process right to be "free from violence from other inmates." *Id.* at 1067. Porter does not identify cases involving more analogous circumstances that would clearly establish that Terry's actions violated the Constitution. Terry is therefore entitled to qualified immunity. *Pearson*, 555 U.S. at 232.

2. Porter also argues that the City and County of San Francisco is liable under § 1983 for failing adequately to train its employees on elopement procedures, citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). To establish municipal liability under *Monell*, Porter must show: "(1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).

4

Porter's *Monell* claims fail under the first element because, as we have held above, there was no violation of Nuriddin's constitutional rights. In addition, we agree with the district court that, of all the purported training deficiencies that Porter alleges, the only one that is potentially related to Nuriddin's elopement is the City's failure to require Terry to carry a cell phone (a policy it has since changed). Assuming this was a deliberately indifferent policy that violated Nuriddin's constitutional rights, Porter's *Monell* claim still fails because he has not shown that it was the "moving force" that caused Nuriddin's death. *Id.*

**AFFIRMED.**



*Ben Porter v. City & County of San Francisco,* No. 19-16343

SEP 2 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Dawson, District Judge, concurring in part and dissenting in part.

I concur in the majority's decision to the extent it concludes there are no triable issues of fact on Porter's *Monell* claims.  Insofar as the majority affirms summary judgment for Appellee James Terry, I dissent.

During the events at issue, Haneefah Nuriddin (Appellant Ben Porter's daughter) was a patient at the Mental Health Rehabilitation Center (MHRC), a locked facility operated by the San Francisco Department of Public Health.  Nuriddin was involuntarily committed by court order so that her competency could be restored to stand trial for criminal charges.[1]  Nuriddin's medical records indicate that she had prior diagnoses of schizophrenia, multiple episodes, and partial remission.  Furthermore, her criminal history revealed a pattern of antisocial tendencies and unpredictable behavior.[2]  While Nuriddin was a patient at MHRC, she continued to experience grandiose delusions and disorganized thinking.  Her medical records also establish she was diagnosed with anosognosia, which indicates that she lacked the ability to recognize her mental health condition.

Medical records indicate that Nuriddin showed signs of progress during her time at MHRC, e.g., medication compliance, improved insight as to treatment

---

[1] The charges related to battery and infliction of bodily injury upon an elder.

[2] Nuriddin's prior criminal history included charges of assault with a deadly weapon, assault, battery, petty theft, resisting arrest, and multiples attempts of battery against a police officer.

needs, active participation in therapy sessions. By April 2015, MHRC personnel were in the process of finding an alternative living arrangement for Nuriddin, preferably one in an unlocked facility. Nuriddin received court approval to attend medical appointments outside the MHRC facility with staff supervision. Unfortunately, Nuriddin disappeared when James Terry accompanied her to a doctor's appointment on April 30, 2015.

According to Terry's deposition, he escorted Nuriddin without carrying a cell phone. Terry testified that he did not "check to see" if he was carrying his phone when they left MHRC. Terry maintained that when they were in the waiting room at the doctor's office, he withdrew his attention from Nuriddin for a matter of seconds to answer a phone call at the receptionist's desk. Terry states that Nuriddin escaped during this time. Terry failed to immediately provide notification of Nuriddin's disappearance to MHRC or law enforcement. Instead, he maintains that he searched for Nuriddin on foot and that he eventually spotted her at a distance outdoors. Terry implored Nuriddin not to flee any further, but she failed to heed his suggestion. Subsequently, Terry pursued Nuriddin for a block-and-a half before he broke his chase and returned to the MHRC facility. Terry then provided in-person notification of Nuriddin's disappearance to a co-worker, and the co-worker responded by contacting law enforcement. Less than seventeen hours after Nuriddin's disappearance, her deceased body was found at a

2

construction site, nearly three miles from where she disappeared.  The cause of her death remains unknown.

At summary judgment, the district court must view the evidence in a light most favorable to Porter, the non-moving party.  *Barlow v. Ground,* 943 F.2d 1132, 1135 (9th Cir.1991).  A court must not resolve credibility issues at summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).  Once the moving party establishes there are no genuine issues of material fact, the nonmoving party must come forward with specific facts establishing a genuine issue for trial.  *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,* 213 F.3d 474, 480 (9th Cir. 2000).  But, the type of proof used by the moving party determines whether the burden shifts.

> Thus if the proof in support of the motion is largely documentary and has a high degree of credibility the opponent must produce convincing proof attacking the documents in order to sustain his burden.... If the moving party's proof is less convincing, as in cases where he relies on his own testimony or has exclusive knowledge of the transaction, the burden of providing evidence may never shift to the opponent.

10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727.2 (4th ed. 2020) (citing John A. Bauman, *A Rationale for Summary Judgment*, 33 IND. L.J. 467, 483-84 (1958)).  If a moving party fails to carry its initial burden of production on a motion for summary judgment, "the

3

nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

In this case, Terry has failed to satisfy his initial burden on summary judgment to show there was not a genuine dispute of material fact. When considering Nuriddin's mental health condition, she was particularly vulnerable. Other than Terry's deposition, there is no evidence explaining Nuriddin's disappearance. The degree to which Terry was vigilant, as well as the time lapse in reporting her disappearance, is crucial to Terry's liability. The time lapse is not established by the record, as there is no indication of when, or even if, Terry and Nuriddin arrived at the doctor's office. Because Terry's version of events is provided by his deposition testimony, cross-examination, not summary judgment, is the best means for testing this evidence. The mere fact that Terry has produced his own testimony does not mean that he carried his initial burden of proving that no genuine dispute of material fact existed. And, in a case such as this, courts should not simply accept what may be a self-serving account.

As for the issue of qualified immunity, officers and officials are entitled to immunity under § 1983 when (1) they violated a constitutional right, and (2) that right was clearly established at the time of the violation. *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). A right is clearly established if the "contours

4

of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). An invocation of qualified immunity is defeated if an officer or official knew or should have known that his actions, taken within the sphere of official responsibility, would violate the constitutional rights of the plaintiff. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

Qualified immunity balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibility and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019). Qualified immunity serves the function of protecting government officers "in the performance of their public, governmental functions." *Bracken v. Okura*, 869 F.3d 771, 774 (9th Cir. 2017). "It does so not to benefit the agents of government, but to safeguard government itself, and thereby protect the public at large." *Id.* (internal quotations and citation omitted). Even so, this does not mean that courts may usurp the jury's province to resolve factual disputes. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009) (stating that whether a constitutional violation occurred constitutes a question of fact, while the examination of whether a right was clearly established is a question of law).

Indeed, it is sometimes the case that qualified immunity cannot be determined as a legal matter on summary judgment because material disputes of fact remain. *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993) ("If the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law.").

This case presents such a circumstance. How and what took place before Nuriddin's disappearance is the essence of whether Terry was liable. Based on the record, Terry was the only witness to explain what happened before Nuriddin disappeared. As previously mentioned, cross-examination, as opposed to summary judgment, is the best means for testing Terry's credibility. If this case were to proceed to trial, the protections of qualified immunity would not be entirely lost to Terry. Rather, qualified immunity would be "transformed from a doctrine providing immunity from suit to one providing a defense at trial." *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017). During a trial, the jury would resolve issues of fact, while the judge would retain the authority to decide "whether the right [at issue] was clearly established once the factual issues [were] resolved." *Id*.

6

Accordingly, I respectfully dissent insofar as the majority affirms summary judgment in Terry's favor.